IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BARTLETT, Individually and on behalf of other similarly situated Chicago Police Department Officers, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 15 CV 11899 |
| vs. | ) ) | Judge John Z. Lee |
| CITY OF CHICAGO, an Illinois Municipal Corporation | ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION <u>SETTLEMENT, SERVICE AWARD, AND ATTORNEY'S FEES AND COSTS</u>**

On October 17, 2016, this Court granted preliminary approval of the Parties' Class Action Settlement and supporting documents in this class action brought by ROBERT BARTLETT on behalf of himself and all others similarly situated, against Defendant CITY OF CHICAGO ("Defendant"). A Fairness Hearing was held on January 31, 2017, at which time all interested persons were given a full opportunity to state any objections to the Parties' Settlement Agreement. The Court having reviewed Plaintiffs' Unopposed Motion and Memorandum of Law in Support of Final Approval of Class Action Settlement, Service Award, and Attorney's Fees and Cost, supporting declarations, exhibits, and documents, and considered as well as the Parties' presentation at the Hearing on Final Approval, and otherwise being fully informed in the premises:

WHEREAS, Defendant does not oppose certification of the class, for settlement purposes only;

1837624.1

WHEREAS, the Court has read and considered the Settlement Agreement, the exhibits attached thereto, and the briefing submitted in support of preliminary approval of the Settlement;

NOW, THEREFORE, IT IS HEREBY ORDERED:

**The Settlement Is Approved**

1. This Court grants final approval of this Class Action Settlement.

2. This Court grants final approval of the Settlement Agreement. Doc. No. 37-4. Unless otherwise defined herein, all terms used in this Final Approval Order will have the same meaning as defined in the Parties' Settlement Agreement ("Settlement Agreement").

3. The Court finds that, for settlement purposes only, the Settlement Class Members are similarly situated and meet the requirements for class certification under Fed. R. Civ. P. 23 and as a collective action under 29 U.S.C. § 216(b). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, including jurisdiction over all Class Members preliminarily certified by this Court in its October 17, 2016, Order. Pursuant to the October 17, 2016, Order, the Court preliminarily approved the Settlement Agreement, which defined the Rule 23 Class and Settlement Class Members as:

> Any person employed as a Chicago Police Officer, below the rank of Sergeant, who was paid for FLSA overtime (defined as overtime owed pursuant to the Fair Labor Standards Act, but not including overtime owed exclusively under contract, collective bargaining agreement, or other law) between July 1, 2012, and June 30, 2013, but who did not receive retroactive pay increases for those overtime payments," and who are identified on the Class Settlement List.
> *See* Doc. No. 25-4.

The FLSA Class carries the same definition as the Rule 23 Class under the Settlement Agreement. The "Settlement Class" consists of all Settlement Class Members who failed to opt out of the Settlement Agreement. "Settlement Participants" shall refer to those Settlement Class Members who did not opt out of the Settlement Class.

4.  The Court finds that the Notice of Proposed Settlement of Class Action Lawsuit ("Class Notice") that was sent to all Settlement Class Members via First Class Mail informed the Settlement Class Members of the terms of the Settlement Agreement, their estimated recovery if the Settlement was approved, the process available to them to obtain monetary relief, their right to request exclusion from the Class and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing.  Doc. 37-2, Ex. A.  The Notice Packet also adequately informed the Settlement Class Members of the Settlement Administrator, Class Action Administration, LLC, as the Settlement Claims Administrator ("Settlement Administrator"), and of the Relevant Period, and informed the Settlement Class Members of the contact information for Class Counsel.  Thus, the Court finds that the Notice provided to the Class provided the best notice practicable under the circumstances, met the requirements of due process and otherwise satisfied the requirements of Fed. R. Civ. P. 23(e)(l)(B) and 29 U.S.C. §216(b).

5.  As explained during the hearing, the Court finds that the Settlement Agreement is fair, reasonable and adequate, is in the best interests of the Class Members, and is the result of arm's length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues in this case in particular, and, therefore, meets the requirements for final approval.  The Court finds that: (a) the strength of the Class Representatives' and Settlement Class Members' claims weighed against Defendant's potential defenses, and the complexity, length and expense of further litigation support approval of the Settlement Agreement; (b) the Gross Settlement Value of Nine-Hundred Thirty-One Thousand, One-Hundred Fifty-Two Dollars and Twenty Cents ($931,152.20), less the amount of the Incentive Award, attorney's fees and costs, and administration fees and costs as set forth in the

Notice is a fair, reasonable and adequate settlement of the Class Representative's individual claims and the claims of the Class; (c) the Settlement Agreement was reached pursuant to arm's length negotiations between the parties; (d) the support for the Settlement Agreement expressed by Class Counsel and Counsel for Defendant, who have significant experience representing parties in complex class actions, including those involving wage and hour claims, weighs in favor of approval of the Settlement Agreement; (e) the absence of any substantive, legitimate objections to the Settlement Agreement by Class Members supports approval of the Settlement; and (f) the litigation has progressed to a stage where the Court and the parties could evaluate the merits of the case, potential damages, and the probable course of future litigation.

6. The Settlement Agreement shall be binding on Defendant, Named Class Plaintiff, and all Settlement Participants. The Court orders that any Settlement Participants bound by the terms of the Settlement Agreement fully release and discharge Defendant, as set forth in the Settlement Agreement, from all actions or causes of action, whether known or unknown, except for those mentioned in Section 4.4.

7. The Court finds that the 3,463 individuals identified by the Claims Administrator, as set forth in the *Declaration of Matthew McDermott Regarding Notice Administration* (Doc. No. 37-2), are bound by the terms of the Settlement Agreement and are entitled to participate in the monetary portion of the Settlement. The Court finds that no Settlement Class Members have requested to be excluded from the Settlement. Similarly, the Court finds that any objections filed by Settlement Class Members have been considered and have no bearing on the Settlement.

8. Accordingly, the Court finds that all Class Members who negotiate their Settlement checks irrevocably consented to join and opt into the FLSA collective action in this litigation, authorized Plaintiff's Counsel to file with the Court their consents to join with the

Court, and orders Class Counsel to file with the Court all of the consents to join signed by Class Members within 240 days of the issuance of the Settlement Checks, regardless of whether a Class Member altered the language on the endorsement on the back of the Settlement Check.

9. Neither this Order, the Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any other proceeding as evidence: (a) of an adjudication of the merits of the case; (b) an adjudication of any of the matters released in the Settlement Agreement, subject to those detailed in Section 4.4; (c) that any party has prevailed in this case; and (d) that Defendant has engaged in any wrongdoing.

10. The Agreement and any and all negotiations, documents, and discussions associated with it, will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, or of any liability or wrongdoing by the City of Chicago, or the truth of any of the claims.

11. Pursuant to the terms of the Settlement Agreement, Defendant will pay an amount into the Settlement Fund equal to the Court-approved Incentive Award, Court approved attorneys' fees and costs, fees and costs incurred by the Settlement Administrator, and the total settlement payments for the Settlement Participants, not to exceed $931,152.20, which will be paid into the Settlement Administrator's trust account by March 20, 2017.

12. With respect to the Settlement Fund and payment of all settlement monies, disbursements, and taxes, Defendant, Class Counsel and the Settlement Administrator shall comply with all of the duties and requirements set forth in the Settlement Agreement and applicable federal, state, and local law.

13. The Settlement Fund, including all interest or other income generated therein, shall be *custodia legis* and immune from attachment, execution, assignment, hypothecation, transfer, or similar process by any third party, including any Settlement Class Member.

**The Service Award Is Approved**

14. Service award of $4,000 to Named Plaintiff, Robert Bartlett, is approved. The amount shall be paid from the Gross Settlement Amount.

15. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g., Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 776-777 (7th Cir. 2013); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). Accordingly, service payments are commonly awarded to those who serve the interests of the class. *Prena v. BMO Fin. Corp.,* 2015 U.S. Dist. LEXIS 6547, at *3 (N.D. Ill. May 15, 2015); *Hawkins v. Securitas Sec. Servs. USA, Inc.,* 280 F.R.D. 388, 395 (N.D. Ill. 2011).

16. In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook, 142 F.3d at 1016*; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc., No. 07 Civ. 2898, 2012 U.S. Dist. LEXIS 25265, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).*

17. Here, Named Plaintiff satisfies all three factors. First, the Named Plaintiff took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to those potential collective action members. He

participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, and assisted Plaintiffs' Counsel in analyzing documents during the informal discovery process. Courts in this district have approved higher incentive awards for similar activities. *Spicer v. Chicago Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993). Second, Named Plaintiff undertook substantial direct and indirect risk by agreeing to bring the action in his name, to be deposed if necessary, and to testify if there was a trial. In so doing, Named Plaintiff assumed significant risk that "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid,* 688 F.3d at 776-77. Third, Named Plaintiff spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort he expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assisting in the preparation and review of the complaint and assorted documents shared by Defendant in the informal discovery process. *See In re Sw. Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735 *11 (N.D. Ill. Aug. 26, 2013), *appeal dismissed* (Jan. 3, 2014).

18. Accordingly, service award of $4,000.00 to Named Plaintiff, Robert Bartlett, for his service to the class is approved.

**Fees and Costs of the Settlement Administrator Are Approved**

19. The Court approves of the Settlement Administrator's fees and costs of $27,000.00.

20. The Court finds that the Settlement Administrator, Class Action Administration, LLC, has performed and will perform its obligations pursuant to the Settlement Agreement.

Accordingly, its fees and costs for claims administration, as provided in the Settlement Agreement, are approved and shall be paid to the Settlement Administrator from the Settlement Fund as of the Effective Date, as provided for in the Settlement Agreement.

### Fees and Costs of the Attorneys Are Approved

21. The Court approves Plaintiffs' Counsel's request for thirty percent (30%) of the Gross Settlement Amount less the amount of the Incentive Award and administration fees and costs as set forth in the Notice for attorneys' fees and all incurred costs, which is $270,045.66.

22. Courts award attorneys' fees as a percentage of the total fund made available to the Class when counsel's efforts result in the creation of a common fund, and therefore, is entitled to a reasonable attorney's fee from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla,* 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when, as in this case, the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . .." *Skelton v. G.M. Corp.,* 860 F.2d 250, 256 (7th Cir. 1988); Doc. 37-4, 3.2(A).

23. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001). District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately

8

negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

24.     Plaintiffs' request for thirty percent (30%) of the adjusted gross settlement amount for attorneys' fees and costs is below the market rate within the Northern District of Illinois as Courts routinely hold that approximately one-third of a common fund is an appropriate attorneys' fees award in class action settlements of this type and size. *See Taubenfeld,* 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon,* 160 F.3d 361, 364 (7th Cir. 1998)(affirming award of 38% of fund); *Briggs v. PNC Fin. Servs. Group*, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016) (awarding fees on wage and hour class action at one-third of fund); *Koszyk v. Country Financial Services,* 2016 U.S. Dist. LEXIS 126893, *4 (N.D. Ill. Sept. 16, 2016)(same); *Castillo v. Noodles & Co.,* 16 CV 03036, 2016 U.S. Dist. LEXIS 178977 (N.D. Ill. December 23, 2016)(same); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015); Zolkos v. Scriptfleet, Inc., 2015 U.S. Dist. LEXIS 91699, at *3 (N.D. Ill. July 13, 2015); Goldsmith v. Tech. Solutions Co., 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995)( noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); Robert Newberg, Newberg on Class Actions § 14.6 (4th ed. 2002)("[F]ee awards in class actions average around one-third[.]"). Plaintiffs' Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the collective.

25.     Before initiating this litigation, Plaintiffs' Counsel agreed with the Named Plaintiff to request no more than thirty percent (30%) of any (at that time uncertain) future recovery plus costs. Thus, the Court knows what private plaintiffs "would have negotiated with

9

their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid,* 264 F.3d at 718, 720. In fact, Named Plaintiff contracted for Plaintiffs' Counsel to be compensated with 30% of the total recovery plus costs. *See In re Dairy Farmers of Am., Inc., 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015)* (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

26. For the reasons stated at the hearing, it was reasonable for the Named Plaintiff to contract for thirty percent (30%) of the adjusted gross settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive approximately one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the typical contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, along with those cited at the hearing, indicate that, in the marketplace, plaintiffs routinely are willing to agree to contingency fee arrangement of approximately 33%. *See In re Synthroid,* 325 F.3d at 976.

27. Plaintiffs' Counsel's decision to charge at or below the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton,* 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of

risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiffs' Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

28. The Court finds that Class Counsel is awarded $270,045.66 for reasonable attorneys' fees and costs. Seventy-five percent (75%) of those fees, or $202,534.24, shall be disbursed to Class Counsel from the Settlement Fund according to the Settlement Agreement, on the date that funds are disbursed to class members.

29. The Court directs that twenty-five percent (25%) of the awarded attorney's fees, or $67,511.42, be retained in the Settlement Fund until further order of the Court, so that the Court can determine the precise amount of the Settlement Fund that is distributed to the class before ordering the release of the balance.

**Dismissal and Post-Judgment Procedure**

30. This matter is dismissed without prejudice, without any cost to any of the parties except as provided in the Settlement Agreement. The dismissal without prejudice shall automatically convert to a dismissal with prejudice and final judgment 245 days after its entry, unless either Party files a Motion to Reinstate beforehand, and that the case may be reinstated only for the sole purpose of seeking to enforce, implement or interpret the terms of this Agreement, including the collection of any payments due under this Agreement, or to ensure that all consents to join are filed with the Court.

31. The Clerk is directed to enter judgment and dismiss this case without prejudice upon the entry of this Order.

32. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order. However, the Court orders that the settlement administrator retain all unclaimed funds in the Settlement Fund and not redistribute them to the *cy pres* recipient until further order of the Court.

33. A status hearing is set for July 25, 2017, at 9:30 a.m., for the Court to determine how, and to whom, any remaining funds held by the settlement administrator will be distributed.

IT IS SO ORDERED.

Dated: January 31, 2017

_____
The Honorable John Z. Lee
United States District Court Judge